UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARRY L. HOWARD,

      Plaintiff,

v.                              Case No: 2:16-cv-321-FtM-99MRM

SUNNILAND    CORP.,    SCOTT
ORTEGON,    and    THEODORE
CLEVELAND HAYES,

      Defendants.

_____

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on defendants' Motion to Dismiss Counts I & IV (Doc. #27) filed on July 25, 2016.  Plaintiff filed a Response (Doc. #34) on September 7, 2016.  For the reasons set forth below, the motion is granted.

**I.**

Plaintiff Garry L. Howard (plaintiff or Howard) filed a five-count Complaint alleging hostile work environment, discrimination, and retaliation against his former employer, Sunniland Corp. (Sunniland), and his former supervisor, Scott Ortegon (Ortegon), sued in his individual capacity (collectively "defendants"). (Doc. #1.)  The underlying material facts are set forth in the Complaint, and are accepted as true for purposes of the motion to dismiss.

Plaintiff is an African American who was employed by Sunniland since in or around October 12, 2007.  (Doc. #1, ¶¶ 14(a), (c).)

Plaintiff was initially hired as a driver, and later promoted to the position of Warehouse Supervisor. (Id. at ¶ 14(e).) Plaintiff alleges that on April 22, 2010, Ortegon, Branch Manager for Sunniland's Naples office, told a racially-offensive joke to a Sunniland salesman, Theodore Cleveland Hayes (Hayes), while plaintiff was present. (Id. at ¶ 14(g).) Plaintiff alleges that on the same day he mentioned to both Ortegon and Hayes that he did not appreciate the racial comments and decided to keep his distance from Hayes. (Id.) Plaintiff states that after this incident, he was the topic of racial jokes and use of the "n" word by Hayes on multiple occasions. (Id. at ¶ 14(h).) And despite numerous complaints to Ortegon, nothing was done and no disciplinary action was taken against Hayes. (Id.)

Other incidents occurred at Sunniland's warehouse, including on May 7, 2010 when Hayes approached plaintiff in an aggressive manner, threatening violence, and plaintiff had to leave work as a result.[1] (Doc. #1, ¶ 14(i).) On May 11, 2010, Hayes, while talking to another employee, used a racial expletive in plaintiff's presence, which plaintiff believed was directed to him. (Id. at ¶ 14(j).) On May 28, 2010, a Sunniland employee also used a racial expletive in plaintiff's presence. (Id. at ¶ 14(k).) Plaintiff

---

[1] Plaintiff alleges that he "left work on multiple occasions to avoid confrontations with Defendant, T.C. Hayes." (Doc. #1, ¶ 24.)

asserts that he reported each of these unwelcome incidents to Ortegon but nothing was done.  Plaintiff alleges that he was demoted as a result of his complaints on June 14, 2010, and thereafter Sunniland reduced his work hours.  (Id. at ¶ 14(l)-(p).)

On September 1, 2010, plaintiff filed an EEOC Charge of Discrimination (EEOC Charge) with the Florida Commission on Human Relations based upon race and retaliation.[2]  (Doc. #1, ¶ 14(q).) Plaintiff alleges Ortegon reduced his hours after he filed the EEOC Charge.  (Id. at ¶ 14(s).)  On April 3, 2013, Ortegon told plaintiff that he was terminated because he was a "no-call/no-show."  (Id. at ¶ 14(t).)  Plaintiff alleges this was in retaliation for plaintiff's EEOC Charge as other white employees were not terminated for the same actions.  (Id.)  As a direct and proximate result of defendants' actions, plaintiff suffered monetary damages as well as emotional pain and mental anguish. (Id. at ¶ 15.)

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing

---

[2] Plaintiff attaches the EEOC Charge to his Complaint as Exhibit B (Doc. #1-1) and incorporates the allegations contained therein.  The EEOC's decision after investigation and Notice of Right to Sue (Docs. ##1-2 – 1-3) are also attached to the Complaint.

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. 1955. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth", Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted). Thus, the Court engages in a two-step approach: "When there are

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## A. Individual Liability

Plaintiff alleges that Ortegon is individually liable under 42 U.S.C. § 1981 and the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, et seq., (Title VII) as a result of his discrimination against plaintiff on the basis of race. Ortegon moves to dismiss the Title VII claims (Counts I & IV) with prejudice, arguing that as an individual – not an employer – he cannot be held liable as a matter of law. (Doc. #27, pp. 3-4.) Plaintiff responds that Title VII provides individual liability for supervisors under agency principles, which he has alleged. (Doc. #34, pp. 5-7.)

Title VII prohibits employers from discriminating against individuals with respect to compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). An individual employee or supervisor who does not quality as an "employer" may not be held personally liable under Title VII regardless of whether the employee is a public entity or private company. Dearth v.

Collins, 441 F.3d 931, 933 (11th Cir. 2006); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (individual capacity suits under Title VII are inappropriate; relief is to be found from the employer).

Here, plaintiff has brought suit against his former "employer," Sunniland.   Therefore, Counts I and IV against Ortegon, individually, will be dismissed with prejudice.   Because the Court has determined that Ortegon may not be held individually liable under Title VII, it need not address Ortegon's further argument that plaintiff failed to exhaust his administrative remedies prior to filing suit under Title VII against Ortegon.

### B. Hostile Work Environment

Sunniland also moves to dismiss Count I on the basis that plaintiff's allegations are not so severe or pervasive as to support a claim of hostile work environment.   (Doc. #27, p. 5-9.) Plaintiff alleges to the contrary.

The "discriminat[ion]" prohibited by Title VII includes the creation of a hostile work environment.   See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-66 (1986).   A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult [ ] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510

U.S. 17, 21 (1993) (internal citations omitted); <u>Pa. State Police</u>
<u>v. Suders</u>, 542 U.S. 129, 133 (2004).  Specifically, plaintiff must
allege that: (1) he belongs to a protected group; (2) he has been
subject to unwelcome harassment; (3) the harassment must have been
based on a protected characteristic of the employee, such as race;
(4) the harassment was sufficiently severe or pervasive to alter
the terms and conditions of employment and create a
discriminatorily abusive working environment; and (5) the employer
is responsible for such environment under either a theory of
vicarious or direct liability.  <u>Adams v. Austal, U.S.A., L.L.C.</u>,
754 F.3d 1240, 1248-49 (11th Cir. 2014) (citation omitted); <u>Reeves</u>
<u>v. C.H. Robinson Worldwide, Inc.</u>, 594 F.3d 798, 808 (11th Cir.
2010) (en banc).  The totality of the circumstances must be
considered when determining whether the allegedly discriminatory
conduct is sufficiently severe or pervasive, including the
conduct's "frequency . . .; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance."  <u>Reeves</u>, 594 F.3d at 808-09 (quoting <u>Harris</u>, 510
U.S. at 21).

Applying these principles, the Eleventh Circuit has
consistently held that a pattern of rude and insensitive remarks,
and/or isolated instances of a more severe nature, are insufficient
to establish a hostile work environment.  <u>Alhallaq v. Radha Soami</u>

Trading, LLC, 484 F. App'x 293, 295 (11th Cir. 2012) ("Title VII is not a 'general civility code' and does not make actionable ordinary workplace tribulations."). For example, in Barrow v. Ga. Pac. Corp., the Eleventh Circuit held that the district court did not err in granting summary judgment against a hostile work environment claim even though the plaintiffs' supervisors repeatedly referred to them using racial slurs and occasionally threatened them with racially-motivated physical violence. 144 F. App'x 54, 57 (11th Cir. 2005). See also Alhallaq, 484 F. App'x at 296 (affirming dismissal of a Muslim employee's hostile work environment claim where employee alleged that employer referred to her as "dirty" and told her to "go to Hell" and "burn in Hell").

Under this standard, after reviewing the Complaint and taking all plaintiff's allegations as true, the Court finds that plaintiff has insufficiently pled that the alleged harassment was sufficiently severe or pervasive. The Complaint reflects that plaintiff worked for Sunniland since 2007 without incident until April 22, 2010, when plaintiff alleges that Ortegon made one racially-offensive joke in plaintiff's presence. (Doc. #1, ¶ 14(g).) Plaintiff also alleges one other instance in May 2010 in which an employee uttered a racial expletive in plaintiff's presence that plaintiff overheard and believed was directed to him. (Id. at ¶ 14(j).) Plaintiff further alleges that he was the topic of racial jokes and use of the "n" word by Hayes on multiple

occasions, which were reported to Ortegon.  (Id. at ¶ 14(h).)  And although plaintiff alleged that Hayes approached him in an aggressive and threatening manner on May 7, 2010, after which he had to leave work, and likewise had to leave work on "multiple occasions," there is no indication that these confrontations were specifically motived by racial animus or done on account of plaintiff's race.  (Id. at ¶ 14(i).)

While these incidents might have been frequent for a short period of time, it appears that they were isolated to a three to four month period in 2010 over plaintiff's nearly six years of employment with Sunniland.  Plaintiff's Complaint alleges no further acts of harassment based upon race after plaintiff filed his EEOC Charge in September 2010, and before his termination nearly three years later on April 3, 2013.  Based upon the totality of the circumstances, this is not the kind of conduct that has been held to be severe or pervasive.  See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (noting that the standards for judging hostility are sufficiently demanding to filter out "sporadic use of abusive language").  Count I will be dismissed with leave to amend as to Sunniland.

## III.

Finally, the Court notes that plaintiff, who is proceeding in forma pauperis but represented by counsel, has not obtained service of process on defendant Hayes.  The United States Marshal Service

has been unable to complete service and counsel has not followed up. (Doc. #14.) Therefore, plaintiff will be required to show cause why defendant Hayes should not be dismissed for failure to execute service of process within the time allotted under Fed. R. Civ. P. 4(m).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Defendants' Motion to Dismiss Counts I & IV (Doc. #27) is **GRANTED** to the extent that Counts I & IV against defendant Ortegon are dismissed with prejudice. Count I against defendant Sunniland is dismissed without prejudice.

2.   Plaintiff may file an Amended Complaint within **FOURTEEN (14) DAYS** in accordance with this Opinion and Order.

3.   Plaintiff shall show cause within **FOURTEEN (14) DAYS** of this Opinion and Order why defendant Theodore Cleveland Hayes should not be dismissed for failure to prosecute.

**DONE and ORDERED** at Fort Myers, Florida, this ___3rd___ day of November, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record